IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-00184-RJ

| | |
|---|---|
| TERRY DEWAYNE JACOBS, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | )     O R D E R |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-29, -31] pursuant to Fed. R. Civ. P. 12(c). Claimant Terry Dewayne Jacobs ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on August 11, 2010, alleging disability beginning July 15, 2009. (R. 183-86, 196). The claim was denied initially and upon reconsideration. (R. 80-110). A hearing before an Administrative Law Judge ("ALJ") was held on March 14, 2012, at which Claimant was represented by counsel and a witness and vocational expert ("VE") appeared and testified. (R. 38-79). On April 27, 2012, the ALJ issued a decision denying benefits. (R. 13-

34). On June 26, 2013, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ's determination at step five is not supported by substantial evidence. Pl.'s Mem. [DE-30] at 11-13.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since August 11, 2010, the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: umbilical hernia and depression. *Id.* The ALJ also determined Claimant had the following non-severe impairments: headaches, degenerative disc disease of the cervical spine, lower back pain, bilateral knee arthritis, obesity, and substance abuse. (R. 19-20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence and pace, and no episodes of decompensation of an extended duration. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform less than a full range of light work,[1] specifically that Claimant can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently and can sit, stand, and walk for up

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

to six hours each in an eight-hour workday with normal breaks. (R. 22). The ALJ further imposed the following limitations: never climb ladders, ropes, or scaffolds; never kneel or crawl; avoid all exposure to hazards; work in a low-stress environment; no interaction with the general public, where "interaction" is defined as "working in conjunction and cooperation with others"; and occasional interaction with co-workers and supervisors. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 23-24). At step four, the ALJ concluded Claimant had no relevant work. (R. 29). Nonetheless, at step five, upon considering the testimony of the VE and Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of performing jobs that exist in significant numbers in the national economy.[2] *Id.*

## B. Vocational Expert's Testimony at the Administrative Hearing

Thomas Neil testified as a VE at the administrative hearing. (R. 69-79). After the VE's testimony regarding Claimant's past work experience (R. 69-70), the ALJ asked the VE to assume a hypothetical individual of the same age, work background, and education as Claimant, who can perform light work with no climbing, crawling, kneeling, or exposure to industrial hazards in a low-stress setting with no more than occasional decision making or changes in setting, no exposure to the general public, and no more than occasional interaction (i.e., to work in conjunction or cooperation with other people in close proximity) with co-workers and supervisors (R. 70). The VE was unable to identify any light, unskilled jobs consistent with the hypothetical. *Id.* The ALJ then

---

[2] Claimant incorrectly states in his brief that "[t]he ALJ found the claimant limited to a restricted range of sedentary work, and thought [sic] the claimant called a vocational expert as a witness, the ALJ disregarded his testimony and gave it little weight, instead relying on Grid Rule 201.28 to determine that the claimant was not disabled." Pl.'s Mem. at 4. In fact, the ALJ restricted Claimant to light work with limitations and based his step five determination on testimony elicited from a VE as opposed to relying on Medical Vocational Guidelines Rule 201.28. (R. 22, 30). Thus, it appears this portion of Claimant's brief may have been included in error.

5

asked the VE if there was any particular aspect of the hypothetical that led to his conclusion, and the VE responded that not working with the public was problematic when considering light, unskilled work. *Id.* The VE provided an example of a dining room attendant who would not need to work with the public but would be exposed to the public. (R. 70-71). The ALJ then posed a second hypothetical changing the term "exposure" to "interaction" so that the individual would have no interaction with the general public. (R. 71). The VE responded that there would be a "restricted range" and identified two jobs:

> Cleaner, goes into a commercial establishment after hours, [DOT #] 323.687-014, light, SVP-2, unskilled, state 1,000, nationally 90,000.
>
> Cafeteria attendant, cleans off the tables, mops and so forth, [DOT #] 311.677-010, light, SVP-2, unskilled, state 900, nationally 70,000. That would be representative, Your Honor, within the limitations of that hypothetical.

*Id.* The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE responded, "To the best of my knowledge, it is, yes." *Id.*

In response to questioning by Claimant's attorney, the VE clarified that the restriction of no exposure to the general public coupled with the restriction on working with co-workers would render the hypothetical individual unemployable. (R. 72). The VE also explained his understanding of the ALJ's limitation with respect to interacting with co-workers and supervisors by giving the following example:

> I identified working as a cleaner. Typically, for example, we just had one come into this building. There was no one else in the building except for myself, in this suite of offices.
>
> They came in by themselves, they cleaned the laundry room. I'm not even sure they knew I was here. Under those circumstances, that would fit with this particular hypothetical. If an individual is part of the team is coming, there were 45[] of them working and they had to work together, then that would not fit.

(R. 72-73). Claimant's attorney then asked if a cafeteria worker would need to work in conjunction with co-workers for an eight-hour workday. (R. 73). The VE explained that a cafeteria worker assigned to ensure all the tables had salt and pepper and other items would not be required to work in conjunction with others, but that an assignment to prepare the food to be handed out would require taking orders from another and working in conjunction with co-workers. *Id.* The VE also indicated that an individual incapable of attention or concentration for five minutes, assuming the limitation is consistent over time, is not employable. (R. 73-74). The VE explained that unskilled work requires an individual to remember one- to two-step type setups. (R. 74).

Claimant's attorney asked the VE whether an individual with the following limitations would be able to perform the jobs previously listed by the VE:

> With regard to his attention and concentration, the finding that he acts as if driven by a motor or fidgety, difficulty engaging in leisure or work activities, does not follow instructions or listen, forgets daily activities. Has difficulty organizing tasks or activities, loses things necessary for tasks or activities, dislikes or avoids tasks requiring sustained attention, acts without thinking about the consequences, easily distracted by external stimuli, does not complete tasks, and overeating.

(R. 75-76). The VE opined that "[a]ssuming that those would occur with a frequency of about one-third of the time, then the individual would not be able to meet any standard." (R. 76). The VE further indicated that excessive worry, unexplained dizziness, and "heart pounds" if they occurred occasionally would make the individual unemployable and that racing thoughts in reaction to being questioned could also impact the ability to perform the listed jobs. (R. 76-77). Claimant's attorney asked if there would be jobs at the sedentary level with the restrictions imposed by the ALJ's hypothetical, and the VE responded in the affirmative and listed the job of addressing clerk. (R. 77). Finally, the VE indicated that the following limitations would restrict an individual to sedentary

work: standing limit of two hours, four hours in an eight-hour workday; walking limit of one mile; sitting limit of two hours, four hours in an eight-hour workday; lifting limited to ten pounds; and no twisting or bending at the waist. (R. 78).

## V. DISCUSSION

Claimant contends the ALJ failed to carry the burden at step five because the jobs listed by the VE could not be performed by an in individual with the limitations posed in the ALJ's hypothetical. Pl.'s Mem. at 4-5. Specifically, Claimant contends that the limitation of never kneeling or crawling would preclude the cleaner job and the limitation of no interaction with the general public would preclude both the cleaner and cafeteria attendant job. *Id.* Claimant further contends that the Appeals Council never evaluated supporting evidence in the form of a report by Claimant's consulting vocational expert, Dr. Dixon Pearsall, because the Appeals Council did not accept the claim for review. *Id.* at 13. The Commissioner contends that the VE's testimony constituted substantial evidence upon which the ALJ properly relied, the Appeals Council considered Dr. Pearsall's report, and Dr. Pearsall's report does not invalidate the VE's testimony.[3] Def.'s Mem. at 10-15. The court agrees with the Commissioner that the VE's testimony constituted substantial evidence on which the ALJ was entitled to rely.

Where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins v. Sec'y, Health &*

---

[3] The Commissioner additionally argues that the ALJ's change in the hypothetical question to reflect "no interaction" with the general public rather than "no exposure" to the general public does not establish prejudicial bias by the ALJ. Def.'s Mem. [DE-32] at 7-9 (citing Pl.'s Mem. at 12). Claimant does not expressly argue that the ALJ showed prejudicial bias in this regard, and the court does not read Claimant's argument as an implicit attempt to "impugn the ALJ" as the Commissioner suggests. *Id.* at 8. Thus, the court finds it unnecessary to address this argument.

8

*Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991), *superseded on other grounds* by 20 C.F.R. § 404.1527. In particular, the court must evaluate if this later-submitted evidence would affect the ALJ's determination. *King v. Barnhart*, 415 F. Supp. 2d 607, 613 (E.D.N.C. 2005); *see also Daniels v. Astrue*, 564 F. Supp. 2d 536, 538 (E.D.N.C. 2008) (explaining additional evidence incorporated into the record by the Appeals Council "must be considered in a determination of whether the [ALJ's] decision was supported by substantial evidence.").

"In making disability determinations, [the SSA] rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ may also utilize the testimony of a VE "to resolve complex vocational issues" to aide in the determination of whether a significant number of jobs exist that meet a claimant's physical and mental abilities and vocational qualifications. *Id.*; 20 C.F.R. § 416.966(b) & (e). The VE's testimony generally should be consistent with the DOT. S.S.R. 00-4p, 2000 WL 1898704, at *2. As such, the ALJ is required to ask the VE whether any possible conflict exists between his testimony and the DOT. *Id.* "'When there is an apparent unresolved conflict between [vocational expert] evidence and the [Dictionary of Occupational Titles], the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.'" *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (unpublished) (quoting S.S.R. 00-4p, 2000 WL 1898704, at *2).

The ALJ did not have the benefit of Dr. Pearsall's report, which was submitted for the first time to the Appeals Council. The Appeals Council stated that it considered "the reasons [Claimant] disagree[s] with the decision in the material listed on the enclosed Order of Appeals Council." (R.

9

2). The Order of Appeals Council indicates that the Appeals Council received and made part of the record Exhibit 17E, Representative Brief dated August 8, 2012. (R. 4). The record reflects that Exhibit 17E contains the Representative Brief with two exhibits, the second of which is Dr. Pearsall's report. (R. 303-16). Thus, the record demonstrates that the Appeals Council did consider Dr. Pearsall's report, but concluded it provided no basis for changing the ALJ's decision. (R. 2). Nevertheless, the court must evaluate whether this later-submitted evidence would affect the ALJ's determination. *King*, 415 F. Supp. 2d at 613.

Dr. Pearsall, utilizing the DOT job descriptions provided by the VE, opined that the VE's testimony was inconsistent with the ALJ's hypothetical in two ways: (1) the cleaner job would be precluded by the limitations of no kneeling and only occasional interaction with co-workers and supervisors; and (2) the cafeteria attendant job would be precluded by the limitations of no interaction with the general public and only occasional interaction with co-workers and supervisors. (R. 314-15). Claimant therefore asserts that Dr. Pearsall's report demonstrates the VE's testimony was not consistent with the DOT and does not constitute substantial evidence supporting the ALJ's step five determination. Pl.'s Mem. at 13. The court disagrees.

> At the administrative hearing, the ALJ and the VE engaged in the following exchange: Mr. Neil, please assume a hypothetical worker the same age as Mr. Jacobs, the same work background and education who retains light exertional capacity. No climbing, crawling, kneeling or exposure to industrial hazards. He would require a low-stress setting with no more than occasional decision making or changes in the setting. Also no exposure to the general public and finally, Mr. Neil, no more than occasional interaction with his coworkers and supervisors. I'll define interaction as the requirement to work in conjunction or cooperation with other people as in close physical proximity. Can you identify unskilled, light work that would be consistent with that?
>
> A Based upon that, no.

10

Q Is there any particular aspect of that hypothetical that leads you to that conclusion?

A Yes, first of all, when I look at light and unskilled work, not working with the public. In other words, this may be a more accurate example. Assume for example an individual who worked as a dining room attendant is not going to have to go to the public in order to perform it, but would be exposed to the public.

Q Mr. Neil, I don't mean to interrupt you, but in order to save some time, I understand what you're saying. Let me change the term exposure to interaction with the general public giving that term the same definition I previously gave it.

A *Under those conditions, Judge, we obviously have a restricted range, but I will identify those in which the individual would meet the conditions as stated. Cleaner, goes into a commercial establishment after hours, 323.687-014, light, SVP-2, unskilled, state 1,000, nationally 90,000. Cafeteria attendant, cleans off the tables, mops and so forth, 311.677-010, light, SVP-2, unskilled, state 900, nationally 70,000. That would be representative, Your Honor, within the limitations of that hypothetical.* Thank you for the clarification.

Q Thank you for your testimony. Is it consistent with the Dictionary of Occupational Titles, Mr. Neil?

A To the best of my knowledge, it is, yes.

(R. 70-71) (emphasis added). Upon further questioning by Claimant's attorney, the VE provided

further explanation:

Q Let me ask you this. There was also an occasional interaction with coworkers and supervisors. That, as I understand the Judge's definition of interaction, was to work in conjunction with. . . . .

A In cooperation. For example, I identified working as a cleaner. Typically, for example, we just had one come into this building. There was no one else in the building except for myself, in this suite of offices. They came in by themselves, they cleaned the laundry room. I'm not even sure they knew I was here. Under those circumstances, that would fit with this particular hypothetical. If an individual is part of the team is coming, there were 45[] of them working and they had to work together, then that would not fit.

Q But a cafeteria attendant is someone who would, and I'm not trying to play the vocational expert, but I've seen cafeteria attendants. They tend, I would think to be around their coworkers and working in conjunction with them for an eight-hour

11

workday. Am I wrong on that?

A A cafeteria worker, for example, you were assigned. You would come, you were out somewhere. You make sure all the tables had salt pepper and etcetera, but that would not be in conjunction with someone else. Now if you were working and taking orders from another person and preparing the food for example like a styrofoam or something that was going to be handed out, then that would be considered in conjunction with or in cooperation with.

(R. 72-73). The court finds this testimony, on which the ALJ relied, constitutes substantial evidence in support of the ALJ's step five determination.

First, the ALJ inquired as to whether the VE's testimony was consistent with the DOT as he was required to do under S.S.R. 00-4p. The ALJ asked the VE if his testimony was consistent with the DOT, and the VE said that his testimony was consistent to the best of his knowledge. (R. 71). Several courts have concluded that the ALJ can rely on the VE's testimony under these circumstances regardless of any perceived inconsistency later raised. *See, e.g., Joines v. Colvin*, No. 3:14-CV-00396-MOC, 2015 WL 1249579, at *9 (W.D.N.C. Mar. 18, 2015) (unpublished) (noting several district courts within this circuit have found the VE's duty to investigate whether a conflict with the DOT exits is satisfied where the ALJ asks the VE if the testimony is consistent with the DOT and the VE responds affirmatively) (collecting cases); *Brooks v. Astrue*, No. 5:10CV00104, 2012 WL 1022309, at *3 (W.D. Va. Mar. 26, 2012) (unpublished) ("The VE affirmatively stated that his testimony was consistent with the DOT, and no party raised any issue with it at the administrative hearing. Simply by inquiring whether the VE's testimony was consistent with the DOT, the ALJ discharged his duty under SSR 00-4p.").

Next, even assuming the ALJ's inquiry and the VE's response regarding consistency with the DOT was not enough to satisfy the ALJ's duty to inquire, the VE sufficiently explained the

apparent conflict here raised by explaining that a subset of jobs existed within the occupations of cleaner and cafeteria attendant that met the limitations posited by the ALJ. (R. 71). The VE specified a cleaner who "goes into a commercial establishment *after hours*" and a cafeteria attendant who "cleans off the tables, mops and so forth," neither of which require interaction with the general public. (R. 71) (emphasis added). The VE further explained in response to questioning by Claimant's attorney regarding the limitation of occasional interaction with co-workers and supervisors that there are jobs where a cleaner and cafeteria worker can work independently and provided examples. (R. 72-73). The VE informed the ALJ that he was identifying a "restricted range," but that the jobs accommodated the limitations given in the hypothetical. (R. 71). S.S.R. 00-4p contemplates this precise scenario:

> The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. . . .
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

S.S.R. 00-4p, 2000 WL 1898704, at *2-3; *see Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *27 (E.D.N.C. Mar. 24, 2009) (unpublished) (memorandum and recommendation finding that "the ALJ complied with SSR 00-4p by asking the VE about the consistency between his testimony and the DOT" and that additionally "even though the VE did not believe there was a 'conflict' with his findings, he provided a reasonable explanation for the apparent inconsistency."). Thus, the VE appropriately addressed the apparent conflict with the DOT by identifying jobs within the occupations of cleaner and cafeteria attendant that could be performed with no interaction with

13

the general public and only occasional interaction with co-workers and supervisors. *See Patten v. Comm'r of Soc. Sec.*, No. 1:13CV236, 2014 WL 5495054, at *6 (N.D.W.Va. Oct. 30, 2014) (finding "discrepancies between the VE's testimony and the DOT do not suggest any error by the ALJ" where SSR 00-4p provides that "'occupations' are broad terms and the DOT uses the 'collective description of those jobs'" and a "VE's testimony about a particular job requirement is considered proper evidence and a VE 'can include information not listed in the DOT.'") (quoting SSR 0-4p, 2000 WL 1898704, at *2); *Hare*, 2009 WL 873993, at *8 ("[T]he ALJ was entitled to rely on the VE's testimony because he provided a reasonable explanation for a perceived conflict with the DOT.").

Lastly, while the VE did not expressly explain the apparent conflict between the "no kneeling" limitation and the DOT description of the cleaner job, any error in doing so is harmless because the VE identified and the ALJ found that there were other jobs the Claimant could perform, i.e., cafeteria attendant, that exist in significant numbers in the state and national economy. *See Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *13 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding error in relying on non-postal mail clerk position was harmless where the VE identified other jobs that the hypothetical individual could perform) (citing *Prunty v. Barnhart*, No. 6:04-CV-00038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (unpublished) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden) & SSR 00-4p, 2000 WL 1898704, at *2), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Accordingly, the court finds that the VE sufficiently explained the apparent conflict between his testimony and the DOT, the VE's testimony constitutes substantial evidence on which the ALJ properly relied at step five, and consideration of Dr. Pearsall's report would not change ALJ's

decision.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-29] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] is ALLOWED, and the final decision of the Commissioner is upheld.

SO ORDERED, this the 31 day of March 2015.

Robert B. Jones, Jr.
United States Magistrate Judge